COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-08-374-CV

 

 

CITY OF ARLINGTON, TEXAS                                              APPELLANTS

AND ALISON TURNER

 

                                                   V.

 

MARK ALLEN RANDALL                                                          APPELLEE

                                              ------------

 

           FROM
THE 352ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

                                                    

                                              ------------

I.  Introduction

This is
an interlocutory appeal by Appellants the City of Arlington, Texas and Alison
Detective Turner from the trial court=s denial
of Appellants= plea to the jurisdiction and
motion to dismiss.  See Tex. Civ.
Prac. & Rem. Code Ann. '
51.014(a)(5), (8) (Vernon 2008).  We will
affirm in part, reverse in part, and remand this case to the trial court.

 








II.  Factual and Procedural Background

Arlington
police obtained a warrant to arrest Appellee Mark Allen Randall for fraud in
obtaining a controlled substance by forgery. 
The arrest warrant, issued by an Arlington municipal court, was based on
Detective Turner=s affidavit stating that Randall
had attempted to pass a forged prescription at a grocery store pharmacy.  According to Detective Turner=s
affidavit, on December 8, 2005, a man presented the pharmacist technician with
a prescription, told him it was for Carolyn Miller, gave the pharmacist
technician Carolyn Miller=s phone number, and said that
she lived at 2572 West Park Row, Arlington, Texas 76017.  The pharmacist technician suspected that the
prescription was forged and informed the pharmacist on duty, who contacted the
doctor named on the prescription.  The
doctor confirmed that the prescription was forged.  The man left the pharmacy before police
arrived.  The pharmacist technician told
police that the man was a white male in his thirties, approximately 5=8"
tall, with a thin build, dark hair, and a goatee or mustache. 








Detective
Turner investigated the offense and ran a computer search of the phone number
given to the pharmacist technician.  She
explained, AWhenever I put the phone number
in from that script it popped up with people that have that phone number and it
showed just Carolyn Miller and Mark Allen Randall.@  The search results did not indicate when
these individuals had used that phone number. 
Randall alleged in his petition that the phone number written on the
prescription had been assigned to him only from June 2000 to October 2000Cfive
years prior to the alleged offenseCthat the
number had been disconnected and reassigned in 2000, and that he had moved to
Houston in 2005.  The only connection
between Randall and the name ACarolyn
Miller@ was
that both of them had been assigned the same phone number in the past.  The address that the man had given the
pharmacist technician did not exist.

Detective
Turner prepared a photo lineup using driver=s
license photographs of six individuals, including Randall.  The pharmacist technician positively
identified Randall from the photo lineup, but the pharmacist was unable to
identify anyone from the lineup. 
Although Randall=s driver=s
license showed that he was 6>3"Bseven
inches taller than the height estimated by the pharmacist technicianCand
lived in Houston, Detective Turner did not inform the magistrate of these facts
when seeking an arrest warrant.  The
warrant issued, and Randall was arrested for fraud.  The State presented the case to the grand
jury, which returned a Ano bill.@  








On
January 30, 2008, Randall filed suit against Appellants seeking damages and
declaratory relief.  In his original
petition, Randall alleged that Appellants were negligent and that they had
violated his rights under the Texas Constitution.  In addition to damages, Randall sought a
declaration that Appellants had violated his constitutional rights and a
declaration ordering the expungement of all evidence of his arrest; Randall
also sought attorney=s fees.    Appellants filed a plea to the jurisdiction and motion to
dismiss, asserting that Detective Turner was entitled to official immunity,
that the City was entitled to governmental immunity, and that Detective Turner
was entitled to immediate dismissal from the suit pursuant to section
101.106(e) of the Texas Tort Claims Act (the TTCA).[1]  Randall twice amended his petition,
ultimately deleting his negligence claims and adding a request for an
injunction prohibiting Appellants from continuing to claim that Randall had
been arrested for, or had committed, fraud and ordering that the records of his
arrest not be disclosed and be destroyed. 
The trial court denied Appellants= plea to
the jurisdiction and motion to dismiss Detective Turner from the suit.  Appellants perfected this interlocutory
appeal.  








On
appeal, Appellants first argue that the trial court erred by denying the motion
to dismiss Detective Turner from the suit. 
If they are correct, then Detective Turner should no longer be a party
to any claims that Randall brought under the TTCA.  For that reason, we will first address the
motion to dismiss.  We will then address
Appellants= arguments regarding the denial
of their plea to the jurisdiction based on Randall=s claims
for damages, injunctive relief, and declaratory judgment based on Appellants= alleged
constitutional violations.  

III.  Motion to
Dismiss Pursuant to Section 101.106(e)[2]

In their
first issue, Appellants argue that the trial court erred by denying the City=s motion
to dismiss Detective Turner from the lawsuit. 
Specifically, Appellants assert that Detective Turner is entitled to
immediate dismissal from the suit pursuant to section 101.106(e) of the civil
practice and remedies code because Randall=s claims
were brought under the TTCA.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 101.106(e).  

 








A. 
Election of Remedies Provision

Under
the TTCA=s
election scheme, recovery against an individual employee is barred and may be
sought against only the governmental unit in three instances: (1) when suit is
filed against the governmental unit only, Tex. Civ. Prac. & Rem.
Code Ann. ' 101.106(a); (2) when suit is
filed against both the governmental unit and its employee, id. '
101.106(e); or (3) when suit is filed against an employee whose conduct was
within the scope of his or her employment and the suit could have been brought
against the governmental unit, id. '
101.106(f).








Section
101.106, entitled AElection of Remedies,@ is
designed to force a plaintiff to decide at the outset whether an employee acted
independently, and is thus solely liable, or whether she acted within the
general scope of her employment so that the governmental unit is vicariously
liable.  See Mission Consol. ISD v.
Garcia, 253 S.W.3d 653, 657 (Tex. 2008); 
Brown v. Ke‑Ping Xie, 260 S.W.3d 118, 121 (Tex. App.CHouston
[1st Dist.] 2008, no pet.).  By requiring
a plaintiff to make an irrevocable election at the time suit is filed between
suing the governmental unit under the TTCA or proceeding against the employee
alone, section 101.106 narrows the issues for trial and reduces delay and
duplicative litigation costs.  Tex.
Bay Cherry Hill, L.P. v. City of Fort Worth, 257 S.W.3d 379, 397 (Tex. App.CFort
Worth 2008, no pet.) (citing Garcia, 253 S.W.3d at 656B57). 

The City
relied on subsection (e) in its motion to dismiss.  That subsection specifically provides, AIf a
suit is filed under this chapter against both a governmental unit and
any of its employees, the employees shall immediately be dismissed on the
filing of a motion by the governmental unit.@  Tex. Civ. Prac. & Rem. Code Ann. ' 101.106(e)
(emphasis added).  All tort theories
alleged against a governmental unit are brought Aunder
the [TTCA]@ for purposes of section
101.106.  See Garcia, 253 S.W.3d
at 659 (citing Newman v. Obersteller, 960 S.W.2d 621, 622B23 (Tex.
1997)).  As the Texas Supreme Court has
explained, ABecause the [TTCA] is the only,
albeit limited, avenue for common‑law recovery against the government,
all tort theories alleged against a governmental unit, whether it is sued alone
or together with its employees, are assumed to be >under
the [TTCA].=@  Id.; see also Tex. Bay Cherry Hill,
L.P., 257 S.W.3d at 400 (dismissing all tort claims against employee
despite fact that plaintiff did not invoke or refer to the TTCA in its
pleadings).  However, claims against the
government brought pursuant to waivers of sovereign immunity that exist apart
from the TTCA are not brought Aunder
[the TTCA].@ See Garcia, 253 S.W.3d
at 659. 








A
governmental entity perfects the statutory right to a dismissal of its
employees upon the filing of a motion to dismiss.  Brown, 260 S.W.3d at 122; Villasan
v. O=Rourke, 166
S.W.3d 752, 758 (Tex. App.CBeaumont
2005, pet. denied).  Even if the
plaintiff amends his petition after the government files a motion to dismiss,
the amended petition does not moot the right created by the filing of a motion
under section 101.106.  Villasan, 166
S.W.3d at 758. 

B.  Application of Section 101.106(e) to Randall=s Claims

 

The City
based its section 101.106(e) motion to dismiss Detective Turner on Randall=s
original petition, thus perfecting its statutory right to a dismissal of its
employee, Detective Turner, upon the filing of that motion.  See Villasan, 166 S.W.3d at 758.  We therefore look to Randall=s
original petition, rather than any of his amended petitions, to determine
whether the trial court erred by not dismissing Detective Turner from the
suit.  See Brown, 260 S.W.3d at
122; Villasan, 166 S.W.3d at 758. 

Randall
contends on appeal that section 101.106(e) does not apply to this case because
he filed suit Apursuant to the Texas
Constitution@ and sought only declaratory
relief based on these constitutional claims, but in his original petition, he
sought damages and a declaratory judgment based on Appellants= alleged
negligence and constitutional violations. 
We will address the application of 101.106(e) to each of these claims.








Randall=s claims
for Appellants= alleged negligence clearly fall
under the TTCA.  See, e.g.,
Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d
339, 344 (Tex.) (dismissing suit against employee when both employee and
governmental entity were sued based on negligence theories not within the TTCA=s
limited waiver), cert. denied, 525 U.S. 1017 (1998). Consequently,
Detective Turner should have been dismissed from these claims.

Regarding
Randall=s
originally pleaded constitutional claims, he claimed that Appellants violated
his rights under the Texas Constitution to be free from unreasonable searches and
seizures, to due course of law, and to freely address wrongs.  He sought damages for Appellants= alleged
constitutional violations by requesting that the trial court overturn City
of Beaumont v. Bouillion, in which the Texas Supreme Court held that no
private cause of action for money damages exists against a governmental entity
for alleged violations of constitutional rights.  896 S.W.2d 143, 147 (Tex. 1995).[3]  Randall also sought a declaratory judgment to
declare that Appellants violated his constitutional rights and to order
expungement of the evidence of his arrest. 














To the extent that Randall sought damages
for alleged constitutional violations, his claims were brought Aunder
the [TTCA]@ for purposes of section
101.106(e).  See Garcia, 253 S.W.3d
at 659; Burdett v. Doe, No. 03-06-00198-CV, 2008 WL 5264913, at *3 (Tex.
App.CAustin
Dec. 17, 2008, no pet.) (mem. op.) (holding that suit to recover damages for
violation of right to privacy under Texas Constitution was brought Aunder
the TTCA@ for
purposes of section 101.106(c)).  But to
the extent that Randall sought a declaratory judgment based on Appellants= alleged
constitutional violations, he did not file suit Aunder
the [TTCA].@ 
 See, e.g., City of Elsa
v. M.A.L., 226 S.W.3d 390, 392 (Tex. 2007) (following Bouillion and
holding that governmental entity could be sued for equitable and injunctive
relief based on alleged constitutional violations); Andrade v. NAACP of
Austin, 287 S.W.3d 240, 251 (Tex. App.CAustin
2009, pet. filed) (following Elsa to hold that sovereign immunity did
not bar claims for declaratory relief for alleged constitutional violations).
Randall=s
request for declaratory judgment was more than a mere recasting of his claims
for damages to which the TTCA applies; he sought a judgment declaring that his
constitutional rights had been violated and ordering expunction of the evidence
of his arrest.  See Garcia, 253
S.W.3d at 659.  But see City of Eagle
Pass v. Wheeler, No. 04‑07‑00817‑CV, 2008 WL 2434228, at
*4 (Tex. App.CSan Antonio Jun 18, 2008, no
pet.) (mem. op.) (holding that appellant=s
request for declaratory judgment that governmental entity and employee violated
his constitutional rights was recasting of his defamation and malicious
prosecution tort claims). 

Consequently, because section 101.106
applies to Randall=s negligence claims and claims
for damages for alleged constitutional violations, we hold that the trial court
erred by denying Appellants= motion
to dismiss Detective Turner from those claims. 
See Tex. Civ. Prac. & Rem. Code Ann. '
101.106(e); Garcia, 253 S.W.3d at 659. 
But because section 101.106 does not apply to Randall=s
request for declaratory judgment for alleged constitutional violations, we hold
that the trial court did not err by denying Appellants= motion
to dismiss Detective Turner from these claims. 
See Tex. Civ. Prac. & Rem. Code Ann. '
101.106(e); Garcia, 253 S.W.3d at 659. 
We sustain in part and overrule in part Appellants= first
issue.

IV.  Plea to
the Jurisdiction

In their second issue, Appellants argue that
the trial court erred by denying their plea to the jurisdiction because Randall
failed to plead facts affirmatively showing that the trial court has
jurisdiction. 

A.  Standard
of Review








A plea
to the jurisdiction challenges the trial court=s
authority to determine the subject matter of the action.  Tex. Dep=t of
Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999).  Whether a trial court has subject matter
jurisdiction and whether a pleader has alleged facts that affirmatively
demonstrate the trial court=s
subject matter jurisdiction are questions of law that we review de novo.  Tex. Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.
2004); Tex. Natural Res. Conservation Comm=n v. IT‑Davy, 74
S.W.3d 849, 855 (Tex. 2002). 

The determination of whether a trial court
has subject matter jurisdiction begins with the pleadings.  Miranda, 133 S.W.3d at 226.    The plaintiff has the burden to plead facts
affirmatively showing that the trial court has jurisdiction. Tex. Ass=n of
Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.
1993); Univ. of N. Tex. v. Harvey, 124 S.W.3d 216, 220 (Tex. App.CFort
Worth 2003, pet. denied).  We construe
the pleadings liberally in favor of the pleader, look to the pleader=s
intent, and accept as true the factual allegations in the pleadings.  See Miranda, 133 S.W.3d at 226, 228; City
of Fort Worth v. Crockett, 142 S.W.3d 550, 552 (Tex. App.CFort
Worth 2004, pet. denied).








If a
plea to the jurisdiction challenges the existence of jurisdictional facts, we
consider relevant evidence submitted by the parties when necessary to resolve
the jurisdictional issues raised, as the trial court is required to do.  See Bland ISD v. Blue, 34 S.W.3d 547,
555 (Tex. 2000) (confining the evidentiary review to evidence that is relevant
to the jurisdictional issue).  This
standard mirrors our review of summary judgments, and we therefore take as true
all evidence favorable to the nonmovant, indulging every reasonable inference
and resolving any doubts in the nonmovant=s
favor.  City of El Paso v. Heinrich,
284 S.W.3d 366, 378 (Tex. 2009) (citing Miranda, 133 S.W.3d at 228). 

If the
pleadings do not contain sufficient facts to affirmatively demonstrate the
trial court=s jurisdiction but do not
affirmatively demonstrate incurable defects in jurisdiction, the issue is one
of pleading sufficiency and the plaintiff should be afforded the opportunity to
amend.  Miranda, 133 S.W.3d at 226B27; see
also Koseoglu, 233 S.W.3d at 840 (stating that plaintiff Amust be
given an opportunity to amend in response to a plea to the jurisdiction@ if
pleading defects can be cured).  If the
pleadings affirmatively negate the existence of jurisdiction, then a plea to
the jurisdiction may be granted without allowing the plaintiff an opportunity
to amend.  Miranda, 133 S.W.3d at
227.

B. 
Governmental Immunity 

Because
a governmental unit is protected from suit by sovereign immunity, a party
seeking to sue a governmental unit must affirmatively demonstrate that the
legislature has waived immunity for the claims brought. Jones, 8 S.W.3d
at 638.  If no such waiver exists, the
trial court lacks jurisdiction over the lawsuit.  Tex. Natural Res. Conserv. Comm'n, 74 S.W.3d
at 855.








C.  Alleged
Constitutional Violations

In his
second amended petition, the live pleading on file when the trial court denied
the City=s plea
to the jurisdiction, Randall asserted claims against Appellants for violations
of his rights to be free from unreasonable searches and seizures, to due course
of law, and to freely, in open court, address wrongs.[4]
Randall sought monetary, injunctive, and declaratory relief based on Appellants= alleged
constitutional violations.  We will
address separately the applicability of governmental immunity to each of
Randall=s
claims.








As a
preliminary matter, we note that Randall brought all of his claims against the
City and against Detective Turner in her official capacity.[5]  Detective Turner is entitled to assert any
defense that the City may assert, and the claims against her are subject to the
same jurisdictional analysis as claims against the City.  See Tex. Bay Cherry Hill, L.P., 257
S.W.3d at 400; Tex. Dep=t of
Health v. Rocha, 102 S.W.3d 348, 353 (Tex. App.CCorpus
Christi 2003, no pet.); Nueces County v. Ferguson, 97 S.W.3d 205, 215B16 (Tex.
App.CCorpus
Christi 2002, no pet.).  Thus, we will
apply the same jurisdictional analysis to Randall=s claims
against Detective Turner as we do to those against the City.  

1.  Damages and Injunctive Relief for Alleged
Constitutional Violations

 

Under
the Texas Supreme Court=s decision in Bouillion and
its progeny, no private cause of action exists against a governmental entity
for money damages relating to the governmental entity=s
alleged violations of constitutional rights. 
See 896 S.W.2d at 147; see also Elsa, 226 S.W.3d at 392
(holding that police officers who sued city for disclosing to media results of
random drug tests could pursue city for equitable and injunctive relief based
on alleged constitutional violations). 
Although no implied private right of action exists for money damages
against governmental entities for violations of the Texas Constitution, a suit
seeking an equitable remedy for violations of constitutional rights may be
maintained against governmental entities. 
Bouillion, 896 S.W.2d at 147. 
The supreme court explained that seeking equitable relief is
fundamentally Adifferent from seeking
compensation for damages, or compensation in money for a loss or injury.@  Id. at 149.  








Here,  Randall specifically sought money damages,
requesting that the trial court overturn Bouillion.  We must, however, follow Bouillion and
we therefore hold that pursuant to Bouillion, Randall=s claims
for monetary damages based on the City=s
alleged constitutional violations are barred by governmental immunity.  See id. at 147.   

Regarding
Randall=s
request for injunctive relief, governmental immunity does not bar suits for
injunctive relief against a governmental entity to remedy violations of the
Texas Constitution.  See id. at
149.  Specifically, Randall pleaded for
injunctive relief Ato enjoin [Appellants] . . .
from continuing to claim that Plaintiff committed [fraud], or was arrested for
[fraud], and to order that this arrest and all records made of such arrest be
destroyed and/or not disclosed and all efforts be made to redeem Plaintiff=s good
reputation and prevent further damage thereto.@  








The
majority of the injunctive remedies sought by Randall essentially seek an
expunction or an order of nondisclosure of records relating to his arrest.  An injunction is an equitable remedy, but by
requesting an expunction or its equivalent, Randall is requesting a legal
rather than an equitable remedy.  See
Brown, 260 S.W.3d at 122.  A court
has no equitable power to extend the clear meaning of the expunction statute,
and a person=s entitlement to expunction
arises only after all statutory conditions have been met.  Harris County Dist. Attorney=s Office
v. Hopson, 880 S.W.2d 1, 3 (Tex. App.CHouston
[14th Dist.] 1994, no writ).  The right
to an expunction is neither a constitutional nor common law right; instead, it
is a statutory privilege set forth in the code of criminal procedure.  McCarroll v. Tex. Dep=t of
Pub. Safety, 86 S.W.3d 376, 378 (Tex. App.CFort
Worth 2002, no pet.); see Tex. Code Crim. Proc. Ann. art. 55.01 (Vernon
2006) (providing conditions for entitlement to expunction); Quertermous v.
State, 52 S.W.3d 862, 864 (Tex. App.CFort
Worth 2001, no pet.).   Thus, to the
extent Randall seeks injunctive relief in the form of an expunction or its
equivalent, the City is immune from Randall=s suit
for this legal remedy.  See Tex.
Loc. Gov=t Code
Ann. ' 202.001
(Vernon 2008) (providing that records may be destroyed without meeting
statutory conditions if directed by expunction order); Tex. Code Crim. Proc.
Ann. art 55.02 (Vernon Supp. 2009) (setting forth procedure for expunction); see
also Tex. Gov=t Code Ann. ' 411.081
(Vernon Supp. 2009) (setting forth requirements for order of nondisclosure).

To the
extent Randall seeks injunctive relief in the form of an order imposing a duty
on the City to redeem his reputation, the City is likewise immune from a suit
seeking imposition of an affirmative duty based on a past alleged actionable
wrong.  See, e.g., Dallas Fire
Fighters Ass'n v. City of Dallas,








228 S.W.3d 678, 683 (Tex. App.CDallas
2004) (holding that request for affirmative relief in form of mandatory
injunction could not impose subject matter jurisdiction on trial court in suit
against city), rev=d on
other grounds, 231 S.W.3d 388 (2007); Tex. Employment Comm=n v.
Martinez, 545 S.W.2d 876, 877B78 (Tex.
Civ. App.CEl Paso 1976, no writ) (stating
that purpose of injunctive relief is Ato halt
wrongful acts threatened or that are in the course of accomplishment, rather
than to grant relief against past actionable wrongs@); Tex.
State Bd. of Registration for Prof=l Eng=rs v.
Dalton, Hinds & O=Brien
Eng=g Co., 382
S.W.2d 130, 134 (Tex. Civ. App.CCorpus
Christi 1964, no writ) (holding that injunctive relief was inappropriate
because no direct allegation or proof existed that there was any probability of
the resumption of such acts).  








Although
Randall=s
pleadings fail to affirmatively demonstrate the trial court=s
jurisdiction over his currently pleaded claims for injunctive relief, they do
not demonstrate an incurable defect in the trial court=s
jurisdiction over all potential relief because the City is not immune from all
claims for equitable remedies and injunctive relief for violations of
constitutional rights.  See Elsa,
226 S.W.3d at 392.  Consequently, Randall
should be allowed the opportunity to amend his petition in this regard.  See Miranda, 133 S.W.3d at 226B27; City
of Elsa v. M.A.L., 192 S.W.3d 678, 683 (Tex. App.CCorpus
Christi 2006) (holding plaintiff failed to plead sufficient facts for
prospective injunctive relief but remanding for opportunity to amend), rev=d in
part on other grounds, 226 S.W.3d at 392.            

We
therefore hold that the trial court erred by denying the City=s plea
to the jurisdiction on Randall=s
currently-pleaded claims seeking monetary and injunctive relief based on the
City=s
alleged constitutional violations but that Randall is entitled to the
opportunity to replead his claims for injunctive relief, if possible, to state
such claims within the trial court=s
jurisdiction.  See Miranda, 133
S.W.3d at 226B27. 

2. Declaratory Judgment
for Alleged Constitutional Violations

 








The Declaratory Judgments Act may be used to
clarify statutes and constitutional imperatives.  See Tex. Civ. Prac. & Rem. Code
Ann. '' 37.001B.011 (Vernon 2008); Chenault
v. Philllips, 914 S.W.2d 140, 141 (Tex. 1996).  Governmental immunity does not shield a
governmental entity from a suit for declaratory relief based on alleged
constitutional violations.  See Frasier
v. Yanes, 9 S.W.3d 422, 425B26 (Tex. App.CAustin 1999, no pet.) (holding that declaratory
judgment is proper action for determining the officers= rights under the
constitution).  A claimant seeking a
declaratory action must already have a cause of action at common law or under
some statutory or constitutional provision. 
See id.  A declaratory
judgment is appropriate only if a justiciable controversy exists as to the
rights and status of the parties and if the controversy will be resolved by the
declaration sought.  Id.  

 








Here,
Randall sought declaratory relief by requesting a declaration that (1) the City
violated Randall=s rights under the Texas
Constitution, (2) Randall is entitled to attorney=s fees
under the Declaratory Judgments Act,[6]
and (3) evidence of his arrest must be expunged.  Sovereign immunity does not preclude Randall
from maintaining a declaratory action against the City, and to the extent that
Randall sought a declaration that the City violated Randall=s rights
under the Texas Constitution, his claims are not barred by governmental
immunity.[7]  See Frasier, 9 S.W.3d at 425B26; Andrade,
287 S.W.3d at 251.  But to the extent
that Randall requested a declaratory judgment that evidence of his arrest must
be expunged, we hold that the City is immune from those legal claims for the
same reasons that the City is immune from Randall=s claims
for injunctive relief detailed above.   See
Tex. Code Crim. Proc. Ann. art. 55.01; Tex. Loc. Gov=t Code
Ann. ' 202.001;
McCarroll, 86 S.W.3d at 378; Quertermous, 52 S.W.3d at 864; Hopson,
880 S.W.2d at 3. 

In
summary, we hold that to the extent that Randall requested a declaration that
the City violated his rights under the Texas Constitution and attorney=s fees
under the Declaratory Judgments Act, the trial court properly denied the City=s plea
to the jurisdiction.  But to the extent
that Randall requested a declaration that evidence of his arrest must be
expunged, we hold that the trial court erred by denying the City=s plea
to the jurisdiction. 

Having
addressed all of the City=s complaints in its second
issue, we sustain in part and overrule in part the City=s second
issue.     

V.  Conclusion

Having
sustained Appellants= first issue in part, we reverse
the trial court=s order denying their motion to
dismiss Detective Turner from Randall=s claims
seeking damages for Appellants= alleged
constitutional violations and render judgment dismissing Detective Turner from
those claims.  Having overruled
Appellants= first issue in part, we affirm
the trial court=s order denying Appellants= motion
to dismiss Detective Turner from Randall=s
request for declaratory judgment based on Appellants= alleged
constitutional violations.  








Additionally,
having sustained Appellants= second
issue in part, we reverse the trial court=s order
denying Appellants= plea to the jurisdiction as to
Randall=s
constitutional claims seeking monetary and injunctive relief and seeking
declaratory judgment that evidence of his arrest be expunged, without prejudice
to Randall=s right to amend his pleadings,
if possible, to allege claims for other equitable or injunctive relief for
which the trial court does have subject matter jurisdiction.  Having overruled Appellants= second
issue with respect to Randall=s
request for a declaratory judgment that Appellants violated his rights under
the Texas Constitution and for attorney=s fees,
we affirm the trial court=s order as to those claims.  We remand this case to the trial court for
further proceedings consistent with this opinion. 

 

SUE WALKER

JUSTICE

 

PANEL: GARDNER, WALKER, and MCCOY, JJ.

 

DELIVERED: December 10, 2009











[1]See Tex. Civ. Prac. &
Rem. Code Ann. ' 101.106(e) (Vernon
2005) (providing for immediate dismissal of governmental employee upon motion
by governmental unit when suit is filed under the TTCA against both a
governmental unit and any of its employees).





[2]Randall argues that we
lack jurisdiction over this interlocutory appeal.  Specifically, Randall contends that because
Appellants did not file a summary judgment motion concerning the motion to
dismiss Detective Turner from the suit, section 51.014(a)(5) of the civil
practice and remedies code, which provides for interlocutory appeals from
denials of summary judgment motions based on governmental employees= immunity, does not
authorize an appeal from the denial of the motion to dismiss.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 51.014(a)(5).  Section 51.014(a)(5) has been construed,
however, as providing for interlocutory appeals not only from the denial of a
summary judgment but also from the denial of a motion to dismiss pursuant to
section 101.106 of the TTCA.  See
Phillips v. Dafonte, 187 S.W.3d 669, 674B75 (Tex. App.CHouston [14th Dist.] 2006, no pet.); see also
Tex. A & M Univ. Sys. v. Koseoglu, 233 S.W.3d 835, 845B46 (Tex. 2007) (holding
that appellate court has jurisdiction over state official=s interlocutory appeal of
trial court=s denial of plea to the
jurisdiction in defense of official capacity).





[3]As we explain in greater
detail below, the supreme court has drawn a distinction between suits for
damages against governmental entities for constitutional violations, which are
barred by governmental immunity, and suits seeking equitable remedies for
constitutional violations, which are not barred by governmental immunity.  See id. at 149.





[4]See Tex. Const. art. I, '' 9, 13, 19.  Randall included a laundry list of factual
bases for his constitutional claims, including failing to properly supervise
and train officers to avoid false arrests, failing to properly investigate the
case against him, using Randall=s photograph in a manner to suggest that he
committed the alleged crime, and using an arrest warrant in a false and
misleading manner.





[5]Appellants raised the
defense of official immunity regarding the claims against Detective Turner, but
official immunity is an affirmative defense that protects a government employee
from personal liability in her individual capacity.  See Vela v. Rocha, 52 S.W.3d
398, 404 (Tex. App.CCorpus Christi 2001, pet.
denied); Battin v. Samaniego, 23 S.W.3d 183, 187B88 (Tex. App.CEl Paso 2000, pet.
denied).  Because Randall sued Detective
Turner in only her official capacity, the defense of official immunity is not
applicable.





[6]See Tex. Civ. Prac. &
Rem. Code Ann. ' 37.009 (Vernon
2008) (providing for award of attorney=s fees in declaratory judgment actions).





[7]Additionally, Randall=s request for attorney=s fees under the
Declaratory Judgments Act is not barred by governmental immunity.  See, e.g., Tex. Educ. Agency v.
Leeper, 893 S.W.2d 432, 446 (Tex. 1994) (holding that award of attorney=s fees and costs against
governmental entity was authorized by the Declaratory Judgments Act); see
also City of San Benito v. Ebarb, 88 S.W.3d 711, 723 n.15 (Tex. App.CCorpus Christi 2002, pet.
denied) (AA request for attorney=s fees against the state
in a declaratory judgment action is not a suit for damages as attorney=s fees are in the nature
of costs, not damages.@).