

# NUMBER 13-12-00215-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

KEITH REDBURN,                                                 **Appellant,**

v.

CHARMELLE GARRETT,
INDIVIDUALLY AND AS CITY MANAGER
OF THE CITY OF VICTORIA, TEXAS,
AND LYNN SHORT, INDIVIDUALLY AND
AS DIRECTOR OF PUBLIC WORKS OF
THE CITY OF VICTORIA, TEXAS, AND
THE CITY OF VICTORIA, TEXAS,                  **Appellees.**

---

On appeal from the 377th District Court
of Victoria County, Texas.

---

# MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Rodriguez and Longoria
Memorandum Opinion by Justice Longoria

By two issues, appellant, Keith Redburn, appeals the trial court's order (1) granting a plea to the jurisdiction filed by appellees, Charmelle Garrett, individually and as the City Manager of the City of Victoria, Texas ("the City"), Lynn Short, individually and as the Director of Public Works for the City, and the City, and (2) dismissing appellant's claims against appellees with prejudice. We reverse and remand.

## I. BACKGROUND

This is a property dispute involving what the City alleges is a public improvement. In 2004, appellant purchased property located at 902 West Stayton Street, consisting of two tracts of land with a tributary between Tracts 1 and 2. According to the City, at the time appellant purchased the property, there was a pre-existing public improvement (specifically, a concrete culvert) that was visible and apparent. The purported public improvement is an outlet that conveys water from underground to above ground and into a naturally-flowing tributary that exists on appellant's property. The City alleges that the culvert and the natural tributary are part of the City's Municipal Separate Storm Sewer System ("MS4"), which acts as a filter and extracts contaminants and pollutants before the toxins reach potable water. The City alleges that, even without the public improvement, appellant's downstream property is burdened by naturally-flowing water.

In 2006, appellant complained to the City about debris and water flowing onto his property. In 2011, appellant plugged the culvert with five tons of concrete. The City advised appellant that he was in violation of the City's MS4 Ordinance, but the plug remained. Subsequently, appellant filed suit against Garrett and Short for injunctive relief to enjoin them from entering his property to repair the storm-water culvert on the

basis that the repairs would result in the City's alleged trespassing by virtue of discharged storm water.

The City filed an answer on behalf of Garrett and Short. The City also filed a plea to the jurisdiction, requesting dismissal of the individual employees in accordance with section 101.106 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e), (f) (West 2011). In addition, the City filed a petition in intervention, alleging three cross-claims against appellant: (1) an enforcement action for statutory penalties in the amount of $5,000 per day pursuant to Chapter 54 of the Texas Local Government Code, in addition to a request for court costs and attorney's fees, *see* TEX. LOC. GOV'T CODE ANN. §§ 54.012, 54.014, 54.015, 54.107 (West 2008); (2) a claim for temporary and permanent injunctive relief to require appellant to remove the plug and to prohibit future plugging; and (3) an action for declaratory judgment with respect to the City's easement and the public improvement, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 37.003 (West 2008).

The trial court held an evidentiary hearing on the City's request for a temporary injunction. Afterward, appellant was ordered to remove the concrete plug within seven days of the court's order. The parties were also ordered to mediation. Although appellant removed the plug, the mediation was unsuccessful.

Subsequently, appellant amended his petition to name the City as a defendant and to add an action for declaratory judgment. Appellant alleged that the City constructed the culvert on and next to his property and that, periodically, the culvert drains large amounts of storm water onto his property, causing significant and irreparable damage. According to appellant, this constitutes an illegal trespass,

3

nuisance, and violation of section 11.086 of the Texas Water Code. *See* TEX. WATER CODE ANN. § 11.086 (West 2008).

Thereafter, the City supplemented its plea to the jurisdiction, arguing that appellant could not establish subject matter jurisdiction for four reasons: (1) sovereign immunity had not been clearly and unambiguously waived under Chapter 11 of the Texas Water Code and doing so would violate public policy; (2) a declaratory judgment action could not be used when subject matter jurisdiction does not exist for the claim under the water code; (3) the City is immune from intentional tort claims pursuant to section 101.057(2) of the Texas Civil Practice and Remedies Code, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (West 2011); and (4) the Texas Supreme Court's decision in *City of El Paso v. Heinrich* prohibits claimants, such as appellant, from seeking to use the judiciary to control governmental functions, *see City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009).

In addition, appellees argued that appellant could not establish subject matter jurisdiction with regard to the claims against Garrett and Short for two reasons: (1) claims against governmental employees in their individual capacities are barred by section 101.106 of the Texas Civil Practice and Remedies Code, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e), (f); and (2) appellant has not alleged that the employees committed any act or omission in their individual capacity.

In his response, appellant made three arguments. First, a governmental unit that voluntarily intervenes in a suit waives immunity. Second, the City's immunity is waived under the Uniform Declaratory Judgment Act. And third, Garrett and Short can be sued

4

without the City because the threatened acts were illegal and therefore not official acts of the City.

After a hearing, the trial court found in favor of the City. The court dismissed appellant's claims against Garrett, Short, and the City, leaving the City's cross-claims against appellant as the only claims pending in the suit. Thereafter, the City supplemented its cross-claims to allege a claim of easement by implied dedication to the extent the culvert extends onto appellant's property and the tributary. This interlocutory appeal ensued. *See id.* § 51.014(a)(8) (West Supp. 2011).

## II. ANALYSIS

In his first issue, appellant contends that the trial court erred in granting appellees' plea and supplemental plea to the jurisdiction. In his second issue, appellant contends that the trial court erred in dismissing his claims without giving him an opportunity to amend his pleadings.

## A. Standard of Review

A plea to the jurisdiction challenges the trial court's subject matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000), *overruled on other grounds by Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004). We review the record de novo to determine whether the trial court has subject matter jurisdiction. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). "We consider only the evidence pertinent to the jurisdictional inquiry and do not weigh the merits." *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). Also, we construe the pleadings in favor of the plaintiff, accepting all his allegations as true. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555. To prevail, the defense must show that,

5

even accepting all of the plaintiff's allegations as true, an incurable jurisdictional defect remains on the face of the pleadings that deprives the trial court of subject matter jurisdiction. *Brenham Hous. Auth. v. Davies*, 158 S.W.3d 53, 56 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

## B. Applicable Law

In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction over lawsuits in which the State or certain governmental units have been sued unless the State consents to suit. *Miranda*, 133 S.W.3d at 224. In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). We assume the truth of the jurisdictional facts alleged in the pleadings unless the defendant presents evidence to negate their existence. *Miranda*, 133 S.W.3d at 226–27. If a plea to the jurisdiction challenges the jurisdictional facts, we consider relevant evidence submitted by the parties to resolve the jurisdictional issues raised. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2008) (citing *Miranda*, 133 S.W.3d at 227); *see Bland Indep. Sch. Dist*, 34 S.W.3d at 555. If that evidence creates a fact issue as to jurisdiction, then it is for the fact-finder to decide. *City of Waco*, 298 S.W.3d at 622; *Miranda*, 133 S.W.3d at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Miranda*, 133 S.W.3d at 228. After the defendant "asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material

fact regarding the jurisdictional issue." *Id.* This standard "generally mirrors" that of a traditional motion for summary judgment. *Id.* When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the non-movant. *Id.*

## C. Dismissal of Appellant's Claims against Garrett and Short

We begin with the dismissal of appellant's claims against Garrett and Short. Appellees argue that the trial court properly dismissed these claims because, under section 101.106 of the Texas Civil Practice and Remedies Code, the City is the only proper defendant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106.

"The Tort Claims Act's election scheme is intended to protect governmental employees by favoring their early dismissal when a claim regarding the same subject matter is also made against the governmental employer." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008). As the Texas Supreme Court has explained:

> Under the Tort Claims Act's election scheme, recovery against an individual employee is barred and may be sought against the governmental unit only in three instances: (1) when suit is filed against the governmental unit only, [TEX. CIV. PRAC. & REM. CODE ANN.] § 101.106(a); (2) when suit is filed against both the governmental unit and its employee, *id.* § 101.106(e); or (3) when suit is filed against an employee whose conduct was within the scope of his or her employment and the suit could have been brought against the governmental unit, *id.* § 101.106(f).

*Garcia*, 253 S.W.3d at 657. "When suit is filed against the employee, recovery against the governmental unit regarding the same subject matter is barred unless the governmental unit consents to suit." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(b)).

7

According to appellees, subsection (e) applies to this case. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e). Subsection (e) provides: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." *Id.* Appellees argue that the trial court correctly dismissed the claims against Garrett and Short based on the City's request under subsection (e). *See id.*

Initially, we note that appellant did not originally file suit against the City.[1] Although appellant later named the City as a defendant in his amended petition, it is the original petition that controls for purposes of the election-of-remedies provisions of section 101.106(e). *See City of Webster v. Myers*, 360 S.W.3d 51, 58 n.4 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("[W]e must look to Myers's Original Petition, rather than his amended petition, in deciding whether a tort claim was brought against the City for purposes of the section 101.106(e) analysis."); *Brown v. Xie*, 260 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (concluding that plaintiff's original petition, not amended petition, is proper pleading to scrutinize in determining whether dismissal under section 101.106(e) is appropriate). Thus, we conclude that subsection (e) does not apply to this case. Accordingly, the trial court could not properly dismiss appellant's claims against Garrett and Short based on the City's request under subsection (e).

---

[1] *See Tex. Dep't of Pub. Safety v. Deakyne*, 371 S.W.3d 303, 309 (Tex. App.—San Antonio 2012, no pet.) ("If the plaintiff initially sues both the governmental unit and the employee (whether individually or in the scope of employment) and the governmental unit moves to dismiss its employee, subsection (e) forces an election: the employee becomes the non-elected defendant and is dismissed; the remaining defendant—the governmental unit—is the elected defendant.").

In their supplemental plea to the jurisdiction, appellees also argued that dismissal was appropriate pursuant to subsection (f). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f). Subsection (f) provides as follows:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

*Id.*

The Texas Supreme Court has explained that there are two conditions to subsection (f). *Franka v. Velasquez*, 332 S.W.3d 367, 381 (Tex. 2011). First, the employee acted within the general scope of his employment. *Id.* Second, "suit could have been brought under the Texas Tort Claims Act — that is, [the] claim is in tort and not under another statute that independently waives immunity." *Id.* If both conditions are met, the suit "is considered to be against the employee in the employee's official capacity only, and the plaintiff must promptly dismiss the employee and sue the government instead." *Id.*

The Tort Claims Act defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(5) (West Supp. 2011). In their supplemental plea to the jurisdiction, appellees argued that "the pleadings undeniably reveal that [appellant's] suit is based on alleged conduct that . . . is within the general scope of the named employees' respective employment."

9

Appellees offered no evidence to substantiate their contention *See Univ. of Tex. Southwestern Med. Ctr. v. Estate of Arancibia*, 324 S.W.3d 544, 551 (Tex. 2010) ("The employee must show that the suit was filed against him based on conduct within the general scope of his employment."). Therefore, we conclude that appellees did not establish their entitlement to dismissal pursuant to subsection (f). *See Kelemen v. Elliott*, 260 S.W.3d 518, 524 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (refusing to dismiss the officer because he failed to meet the first prong of his burden of proof, that is, he failed to show that the alleged assault of a fellow officer was within the general scope of his employment with the city). Accordingly, the trial court could not properly dismiss appellant's claims against Garrett and Short based on subsection (f).

Finally, in their plea to the jurisdiction, appellees sought dismissal "because the two individuals have committed no acts or omissions that places [sic] them before the Court in their individual capacities." According to appellees' plea to the jurisdiction, "to maintain an ultra vires claim against an official in his individual capacity, one must [not] complain of the individual's exercise of discretion . . . [but rather must] allege and prove the individual acted without legal authority or failed to perform a purely ministerial act." In their appellate brief, appellees acknowledge that appellant "has pleaded that defendants must be enjoined from illegally trespassing." In other words, appellant complains about Garrett and Short entering his property without legal authority. *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 389–90 (Tex. 2011) (holding that suit to enjoin governmental entity from entering plaintiff's property without authority "is an ultra vires [claim] that must be brought against the governmental official and not the State"). This falls within the ultra vires exception. *See Heinrich*, 284

10

S.W.3d at 372–73 ("To fall within this ultra vires exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."). Therefore, the trial court could not properly dismiss appellant's claims against Garrett and Short based on appellees' contention that the claims were not ultra vires.

In sum, we have reviewed each of the three grounds on which appellees requested dismissal of appellant's claims against Garrett and Short and have concluded that the trial court could not properly dismiss appellant's claims based on any of the three grounds. Accordingly, we conclude that the trial court erred in dismissing appellant's claims against Garrett and Short.

## D. Dismissal of Appellant's Claims against the City

Next, we consider the dismissal of appellant's claims against the City. In his amended petition, appellant alleges causes of action against the City for declaratory judgment and injunctive relief. *See id.* at 377 ("[c]onsidering the nature of the liability sought to be imposed, and construing [plaintiff's] pleadings liberally"). As set forth more fully below, the "real substance" of appellant's claims involves a suit for land. *See Sawyer Trust*, 354 S.W.3d at 390 ("The central test for determining jurisdiction is whether the 'real substance' of the plaintiff's claims falls within the scope of a waiver of immunity from suit."). Appellant seeks to quiet title to his property and to establish his exclusive right of possession. *See id.* at 389–90 (holding that plaintiff's claims to establish ownership of property through an action for declaratory judgment and to obtain injunctive relief to prevent a governmental entity from entering the property are "in substance [a suit] to determine title to land"). Appellant also seeks injunctive relief to

11

enjoin the City from trespassing, which is an intentional tort. *Hidalgo County v. Dyer*, 358 S.W.3d 698, 704 (Tex. App.—Corpus Christi 2011, no pet.) ("The intentional tort of trespass involves the intent to commit an act which violates a property right or is practically certain to have that effect, although the actor may not know the act he intends to commit is a violation of a property right."). Thus, it appears that appellant's claims against the City are barred by immunity. *See Sawyer Trust*, 354 S.W.3d at 388 ("When in this state the sovereign is made a party defendant to a suit for land, without legislative consent, its plea to the jurisdiction of the court based on sovereign immunity should be sustained"); *Dyer*, 358 S.W.3d at 704–05 ("The Department and the County argue that immunity from suit has not been waived for Dyer's trespass claim because Dyer has alleged an intentional tort for which the Texas Tort Claims Act does not waive immunity. We agree."); *Harris County v. Cypress*, 50 S.W.3d 551, 554 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("Appellee's Second Amended Petition clearly asserts that appellant's dumping of hazardous materials on its property was intended[; thus, it] states a cause of action for intentional trespass[ for which immunity has not been waived.]").

However, because the City filed a petition in intervention, in which it alleged cross-claims against appellant for statutory penalties, declaratory relief and injunctive relief, along with a request for attorney's fees and court costs, it is nonetheless possible that appellant's claims are not barred by immunity. *See Sweeny Cmty. Hosp. v. Mendez*, 226 S.W.3d 584, 592 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("This Court likewise has held that by asserting compulsory counterclaims in response to a suit brought by a company, the governmental entity waived immunity from suit for the

12

company's claims for the intentional torts of fraud and conspiracy because they were germane to the matter in controversy."). As the Texas Supreme Court has recently explained:

> Once a governmental entity has asserted an affirmative claim for monetary relief, it must participate in the litigation process as an ordinary litigant as to that claim. And when a governmental entity asserts affirmative claims for monetary recovery, whether by filing suit or by counterclaim, the trial court acquires jurisdiction over the entity's claims and certain offsetting, defensive claims asserted against the entity. That is not because the entity effected a change in its immunity by filing a claim, but because the judiciary has abrogated the entity's common law immunity from suit as to certain offsetting claims.

*City of Dallas v. Albert*, 354 S.W.3d 368, 375 (Tex. 2011). Thus, we will examine the City's affirmative claims for relief to determine the extent to which, if at all, the trial court acquired jurisdiction over appellant's claims against the City.

As noted above, the City's cross-claims against appellant include an enforcement action under Chapter 54 of the Texas Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. §§ 54.012, 54.014, 54.015, 54.107. In connection with this claim, the City alleges in relevant part:

> Mr. Redburn violated the MS4 Ordinance by dumping pollutants and obstructing into the City's separate storm sewer system when he capped the concrete culvert with 5 tons of concrete. Mr. Redburn was advised through his attorney of this violation by letter dated April 7, 2011, and warned of the consequences of non-compliance. Mr. Redburn fails to cooperate and intentionally continues to defy the law by failing to remove the concrete barrier and placing the public at risk of imminent harm. Mr. Redburn's defiance puts the City's residents in jeopardy. This culvert is an improvement to an existing waterway historically referred to as the Phillips ditch which burdened appellant's property prior to any City action in connection with the drainage structure involved. It serves as a watershed during rains, and prevents flooding. Mr. Redburn only recently took it upon himself to plug it. Undoubtedly, during the next rain, the water that flows into this culvert will back up and cause flooding and other damages to the City.

13

The City seeks a temporary injunction to "allow access upon [appellant's] property for purposes of removing obstructions to the public MS4 storm sewer immediately to return the parties to the status quo." The City also "asks the court to order the demolition or removal of the concrete cap and to order daily civil penalties for every day and every independent violation of the MS4 ordinance by Redburn."

In its action for declaratory judgment, the City "claims an easement in and to the property [belonging to appellant] for purposes of maintaining the MS4." The City seeks a final judgment that would include "awarding title and possession of the area burdened by the drainage ditch known as the Phillips ditch easement to the City." The City requests a "finding [that] the concrete culvert is a public improvement not subject to abatement." In addition, the City seeks a judicial declaration as follows:

> Redburn unlawfully interfered with the City's public improvement and easement on or about March 28, 2011. Furthermore, Redburn plugged the 60-inch public improvement with 5 tons of concrete on or about March 28, 2011. Redburn improperly prohibits the City from using the easement to access the public improvement to maintain it for public health and safety.

In sum, the City has asserted an affirmative claim for monetary relief, a claim to quiet title to an easement on appellant's property, and a claim to enforce its rights to access a public improvement through an award of injunctive relief against appellant. As set forth below, we believe appellant's claims are "claims that would offset, in whole or in part, any recovery by the City and that [are] germane to, connected with, and properly defensive to the City's claims." *See City of Dallas*, 354 S.W.3d at 375. In fact, the claims could not be more closely related.

In his amended petition, appellant alleges in relevant part as follows:

14

The City of Victoria[,] Texas constructed a storm water drain culvert next to and on Plaintiff's property which said culvert periodically drains large amounts of water onto and across Plaintiff's property causing significant and irreparable damage to Plaintiff's property. The City of Victoria does not have the Plaintiff's consent or permission and the City of Victoria does not have an easement or other legal authority to enter Plaintiff's property and are illegally trespassing in violation of the Texas Water Code section 11.086.

Appellant requests relief that includes the following:

Declaratory judgment declaring that under section 11.086 of the Texas Water Code the Defendants are illegally draining storm water from the City of Victoria's STORM WATER drainage system onto and across the Plaintiff's property and are trespassing on Plaintiff's property.

Declaratory judgment declaring that under section 11.086 of the Texas Water Code the Plaintiff is not obligated or required to accept the storm water this [sic] is periodically drained storm water from the City of Victoria's STORM WATER system onto and across Plaintiff's property.

[Declaratory judgment declaring that] Plaintiff is the owner of the property including all surface rights in a certain tract of land located in Victoria County Texas known as 902 Stayton Street Victoria Texas upon which the Defendants are trespassing.

In his prayer, appellant requested the following relief:

That after a final hearing the Court Grant Plaintiff's request for Declaratory Judgment that the Defendants are trespassing on Plaintiff's property and [t]hat the Court permanently enjoin . . . the Defendants, to desist, cease and stop draining storm water upon and onto and across Plaintiff's property located at 902 Stayton Victoria Texas.

As noted above, "a governmental entity does not enjoy immunity from suit in the first instance for claims against it that are germane to, connected with, and properly defensive to claims that the governmental entity asserts." *Sweeny*, 226 S.W.3d at 592. Thus, we must determine whether appellant's claims for declaratory judgment and injunctive relief are sufficiently related to the City's cross-claims for statutory penalties, declaratory judgment, and injunctive relief. We conclude that they are.

15

"In common usage, the term 'germane' means closely akin, being at once relevant and appropriate, closely or significantly related, relevant, and pertinent." *Id.* "[T]he term 'germane' . . . is not narrower in scope than the test for a compulsory counterclaim." *Id.* Rule 97 of the Texas Rules of Civil Procedure requires parties to assert any counterclaim "not the subject of a pending action, which at the time of filing . . . the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and does not require the presence of third parties over whom the trial court could not exercise jurisdiction. TEX. R. CIV. P. 97(a) ("Compulsory Counterclaims"). Consequently, "[a] compulsory counterclaim is germane to the opponent's claim by its very nature." *City of Dallas v. Redbird Dev. Corp.*, 143 S.W.3d 375, 383 (Tex. App.—Dallas 2004, no pet.). "In common usage, the term 'connected' means united, joined or linked and joined together in sequence; linked coherently and having parts or elements logically linked together." *Sweeny Cmty. Hosp.*, 226 S.W.3d at 592.

In this case, appellant's claims against the City are "germane" to the City's claims against appellant in the sense that they are "significantly related, relevant, and pertinent." *Id.* A resolution of the rights of the parties will depend on facts common to all the claims because, to a great extent, the pleadings mirror each other. *See id.* ("[W]e disagree that it is necessary for [the defendant's] counterclaims to mirror the cause of action brought by [the governmental entity]."). In addition, appellant's claims fit within the definition of compulsory counterclaims. *See* TEX. R. CIV. P. 97(a); *see Redbird Dev. Corp.*, 143 S.W.3d at 382 ("[W]hen a governmental entity files suit against a party, that entity waives, at a minimum, immunity for suit for counterclaims filed as a consequence

16

of the suit"). Moreover, appellant's claims are "connected to" the City's cross-claims and "properly defensive"[2] to those claims because, if established, the practical effect of appellant's claims would be to rebut one or more essential elements of the City's claims. *See Dillard v. Tex. Elec. Co-op.*, 157 S.W.3d 429, 430 (Tex. 2005) ("An inferential rebuttal defense operates to rebut an essential element of the plaintiff's case by proof of other facts."); *Select Ins. Co. v. Boucher*, 561 S.W.2d 474, 477 (Tex. 1978) ("The basic characteristic of an inferential rebuttal is that it presents a contrary or inconsistent theory from the claim relied upon for recovery."). "In this situation, we believe it would be fundamentally unfair to allow [the City] to assert affirmative claims against [appellant] while claiming it had immunity as to [appellant's] claims against it." *Reata Construction Corp. v. City of Dallas*, 197 S.W.3d 371, 376–77 (Tex. 2006).

Accordingly, the trial court erred in granting appellees' plea to the jurisdiction with regard to appellant's claims against the City. We sustain appellant's first issue and dismiss appellant's second issue as moot.

---

[2] *See Anderson v. State*, 62 S.W.2d 107, 110 (Tex. 1933) ("Where a state voluntarily files suit and submits its rights for judicial determination, it will be bound thereby, and the defense will be entitled to plead and prove all matters properly defensive [including] the right to make any defense . . . germane to the matter in controversy."); *see also Reata Construction Corp. v. City of Dallas*, 197 S.W.3d 371, 377 (Tex. 2006) (applying the *Anderson* rule and stating, "we see no substantive difference between a decision by the City to file an original suit and the City's decision to file a claim as an intervenor in [the plaintiff's] suit. Accordingly, when the City filed its affirmative claims for relief as an intervenor, the trial court acquired subject-matter jurisdiction over claims made against the City which were connected to, germane to, and properly defensive to the matters on which the City based its claim for damages.").

17

## III. CONCLUSION

The order of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

_____
NORA L. LONGORIA
Justice

Delivered and filed the
28th day of February, 2013.

18